Perkins *v*. Jones.

The judgment is reversed, and the cause remanded for a new trial.

*G. M. Overstreet* and *A. B. Hunter*, for appellant.

*D. E. Williamson*, Attorney General, for the State.

———o———

PERKINS *v*. JONES.

<div style="float:right">26 499<br>137 672</div>

CONTRACT MADE ON SUNDAY.—A contract made on Sunday is void, but may be ratified on another day.

SAME.—The mere retention of that which one has received upon such a contract, even after a demand for its return, will not amount to a ratification.

APPEAL from the *Lagrange* Common Pleas.

GREGORY, C. J.—Suit by *Jones* against *Perkins*. The complaint consists of three paragraphs. The first and second each set up a contract for the sale and delivery of hogs, and a breach of it. The third is for money paid. Answer, general denial; and as to the first and second paragraphs, that the contract was made, and the $50 paid thereon, on *Sunday*. Reply, general denial, and a subsequent ratification of the contract. Trial by jury, verdict for the plaintiff.

The jury found specially that there was but one contract made for the sale and delivery of hogs between the plaintiff and the defendant; that that contract was made, and the $50 paid, on *Sunday;* that there was no subsequent contract of ratification; that the only act of ratification was the demand made for the return of the $50, and a refusal by the

defendant. The defendant moved the court below for judgment on these special findings, but the motion was overruled, and this is assigned for error.

The court instructed the jury, over the objection of the defendant, as follows: 3. "A contract made on *Sunday* is void, but if the parties on a proper day affirm or ratify the contract, it then becomes valid and binding upon them." 5. "If, therefore, in this case you find from the evidence that the plaintiff paid the defendant $50 on this contract on *Sunday*, and that he afterwards, on a week day, made a demand of this money, which the defendant refused to return, the original contract thereby became affirmed, and as valid as if made on the latter day, and a part of the purchase money paid on that day." A motion for a new trial, founded upon the giving of this instruction, was overruled, and this is assigned for error.

The illegality of a contract made on *Sunday* arises from positive provisions of a statute, which forbids, under a penalty, the exercise on that day of such employment and labor.

The true principle in such cases is stated by Lord MANS-FIELD, in *Holman* v. *Johnson*, 1 Cowper 343. He says: "The objection that a contract is immoral or illegal, as between the plaintiff and defendant, sounds at all times very ill in the mouth of the defendant. It is not for his sake, however, that the objection is ever allowed; but it is founded in general principles of policy, which the defendant .has the advantage of, contrary to the real justice, as between him and the plaintiff, by accident, if I may so say. The principle of public policy is this: *ex dolo malo non oritur actio*. No court will lend its aid to a man who founds his cause of action upon an immoral or an illegal act. If from the plaintiff's own stating, or otherwise, the cause of action appears to arise *ex turpi causa*, or the transgression of a positive law of this country, there, the court says, he has no right to be assisted. It is upon that ground the court goes, not for the sake of the defendant, but because

it will not lend its aid to such a plaintiff. So, if the plaintiff and defendant were to change sides, and the defendant was to bring his action against the plaintiff, the latter would then have the advantage of it, for where both are equally in fault, *potior est conditio defendentis.*"

Contracts of this character are not, however, rendered void as being illegal at common law, but their illegality consists merely in being *mala prohibita*, not *mala in se*, and they may be made obligatory by the subsequent act of the parties.

It has been held that where the contract has been completed on *Sunday*, it may be rendered obligatory by the subsequent promise of the parties to perform it. Such promise is considered as a ratification of the contract, and when so ratified the parties may have a remedy thereon. It was for the first time so ruled in *Williams* v. *Paul*, 6 Bing. 653. That was a contract executed on *Sunday;* the property was retained by the defendant, and afterwards, on another day, the defendant promised to pay the plaintiff for the property, and it was held that the subsequent promise "was sufficient on the *quantum meruit*, or as a ratification of the agreement made on *Sunday*." They would allow no recovery to be had on the contract made on *Sunday*, but treated the promise as creating a new duty, that would allow the recovery for the value of the property on the general counts. Whether this modification of the act, so made by judicial construction merely, is founded upon those principles of public policy which gave rise to the passage of the act, has been justly questioned. PARK, J., in that case, says: "We regret to be obliged to come to this conclusion, because it may have a tendency to defeat the statute." The case evidently adopted a principle never before recognized in the *English* courts, and neither the court nor counsel referred to a case in which the doctrine had been sustained, and in *Simpson* v. *Nichols*, 3 Mees. & Wels. 241, the court expressed a doubt whether the case of *Williams* v. *Paul, supra,* could be supported in law. It is to be borne

in mind, however, that that case proceeds only upon the ground of a retention of the property and a subsequent express promise to pay for the same, sufficiently definite and positive to be the substantive ground of an action, distinct from that made on the *Sabbath*.

In the case in judgment, the question is, will a promise be implied from the mere fact of a retention of the money paid on the contract? It is evident that the *English* authorities have not gone to this extent, for while it has been held that a subsequent express promise is sufficient to sustain a recovery for the value of the property, it has never been decided by the *English* courts that a promise can be implied from the mere fact of a retention of the property; but, on the contrary, *Chitty* in his treatise on contracts says, that the law will not raise an implied promise from the mere fact that the property had been retained by the defendant. And this is the ruling of the court in *Simpson* v. *Nichols*, *supra*. In *Smith* v. *Bean*, 15 New Hamp. R. 577, PARKER, C. J., in referring to a contract of sale made on *Sunday* says: "It is generally said of such an illegal contract, that it is void. If this were so, and the contract, in the broad sense of the term, were void, no property would pass by it; the vendor might reclaim the property at will, and, being his property, it would be-subject to attachment and levy by his creditors, in the same manner as if the attempt to sell had never been made. But this is not what is intended by such phraseology. The transaction being illegal, the law leaves the parties to suffer the consequences of their illegal acts. The contract is void, so far as it is attempted to be made the foundation of legal proceedings. The law will not interfere to assist the vendor to recover the price. The contract is void for any such purpose. It will not sustain an action by the vendor upon any warranty or fraud in the sale. It is void in that respect. The principle shows that the law will not aid the vendor to recover the possession of the property if he has parted with it. The vendee has the possession, as of his own property, by the assent of the vendor; and the

law leaves the parties where it finds them. If the vendor should attempt to retake the property without process, the law, finding that the vendee had a possession which could not be controverted, would give a remedy for the violation of that possession. When, then, it is said that the contract is void, the language is used with reference to the question whether there is any legal remedy upon it." *Adams* v. *Gay,* 19 Vermont 358, stands opposed to this doctrine, but in *Sumner* v. *Jones,* 24 Vermont 317, it is admitted that the *Vermont* cases are in conflict with the well established rule in *England.* The common law rule binds us, as we have adopted the common law by statute.

The special findings show that the contract was made and the money paid on *Sunday,* and that the only act of ratification was the retention by the defendant of the money paid. Under this finding the judgment ought to have been for the defendant.

The judgment is reversed, with costs, and the cause remanded, with directions to render a judgment on the special findings for the defendant.

*A. Ellison,* for appellant.

*Wade* and *Redmond,* for appellee.