*D. D. Dykeman*, for appellees.

---

Pate *v.* Wright and Another.

PRACTICE.—*Instructions to Jury.*—A party having required the court to give the instructions to the jury in writing, the judge repeated orally a part of one of the charges, and in reading another charge remarked orally that he had not intended to read so far, and then re-read the charge as he intended to give it.

*Held*, that this was not a violation of the provision of the code, that all instructions shall be in writing if required by either party.

SUNDAY.— *Common Labor.*— *Contract.*—Where persons enter into a contract to be performed on Sunday by common labor, such contract, as to its performance on Sunday, is illegal and void.

SAME.— *Work of Necessity.*—The delivery of a quantity of flour on board a steamboat on Sunday in order to avoid the liability of delay in getting it to market occasioned by danger of the closing of navigation, is not a work of necessity.

APPEAL from the Switzerland Common Pleas.

GREGORY, J.—Suit by the appellant against the appellees on

a contract for the sale and delivery of three thousand barrels of flour. The complaint is in four paragraphs.

The first paragraph alleges the sale of three thousand barrels of "Double Extra Montezuma Mills Family Flour" to the plaintiff, by sample, for $28,800, paid down; that the sample was of a "superior double-extra grade of flour," known in the market at New Orleans as "Montezuma Double Extra Flour;" that the defendants undertook and warranted the bulk of said three thousand barrels of flour to correspond with the sample; that the three thousand barrels of flour which they delivered were not of a grade and quality of flour corresponding with the sample, but were inferior, to wit, only superfine; that the same were worth three dollars per barrel less; whereby plaintiff suffered six thousand dollars damages.

The second paragraph alleges a purchase by the plaintiff of three thousand barrels of flour for $28,800, paid down, which the defendants agreed to deliver on board the steamboat Peytona, at the wharf in the city of Madison, on the 15th of January, 1865; that the defendants knew plaintiff had contracted with said steamer, that she would arrive January 15th, 1865, and that the flour was expressly purchased for shipment to, and sale in, the New Orleans market; that the defendants did not deliver the three thousand barrels of flour, but only one thousand barrels, at the time agreed upon, and did not deliver the balance till long after; that the price of flour fell three dollars per barrel in the interim, which the plaintiff lost; that the plaintiff was compelled to pay the owners of the steamer Peytona three hundred dollars for not furnishing the freight, that is, the additional two thousand barrels not delivered.

The third paragraph is like the first and second, *i. e.*, it alleges that the contract of warranty and delivery was one.

The fourth paragraph alleges, that the plaintiff had purchased and paid $28,800 for three thousand barrels of flour, and that the defendants agreed to deliver the same at the wharf in the city of Madison in time to ship the same upon

the steamboat Peytona, which the plaintiff had engaged to transport the flour; that the flour was purchased expressly for shipment upon said steamboat to New Orleans, but that the exact time of her arrival was unknown; that the defendants, were fully informed of the objects of the purchase; that at the time of the purchase the weather was very cold, and there was great probability that navigation in the Ohio river would be closed with ice in a short time, and that the contract of delivery was made with reference to the state of the weather and stage of the river at that time; that said steamboat arrived at the wharf at Madison on the 15th day of January, 1865, and the plaintiff was ready and willing then and there to receive the flour, but the defendants refused to deliver two thousand barrels of the same; that after the departure of the Peytona the river closed with ice, and the plaintiff was unable to ship the balance of the flour till a long time afterward.

This paragraph contains the same allegations with regard damages as the other paragraphs.

The defendants answered: first, general denial; second, as to the contract to deliver, that they had no notice of the arrival of the Peytona until the evening of January 14th, 1865; and that the 15th (the next day) was Sunday, and they were not obliged to deliver the flour on that day; that they commenced to deliver the flour at midnight of the last named day, and that the steamer Peytona left after receiving one thousand barrels; third, that the defendants were commission merchants, and did not own the flour; that they accounted for the flour before notice.

The plaintiff replied by the general denial. Trial by jury; verdict for the defendants; motion for a new trial overruled, and judgment.

There are a number of questions argued by the appellant's counsel. As the verdict was for the defendants, all the questions on the evidence and the instructions of the court as to the measure of the damages become immaterial.

The judge was. required by the appellant to give the

charges to the jury in writing. The court *repeated* orally a part of one of the charges. In reading another charge, the judge remarked orally, that he had not intended to read so far as he had, and then re-read the charge as he intended to give it. It is claimed that this is a violation of the provision of the code requiring all instructions to be in writing when it is required by either party. We hold that there was no error in the action of the court. The instructions were not modified or changed by any oral charge, but they went to the jury as they were written.

At the request of the appellees the court charged the jury as follows:—

"When parties enter into a contract to be performed on Sunday by the common labor of the party required to perform, and his employees, the contract as to performance on Sunday is illegal and void, and neither of them can maintain an action against the other arising out of said contract in respect to its non-performance on Sunday."

The appellant asked the court to charge the jury as follows:—

"Work and labor on Sunday are prohibited by statute, except in cases of charity or necessity. If you find from the evidence that negotiations were being made between the plaintiff and defendants for the purchase of three thousand barrels of flour, for the purpose of shipping the same to New Orleans; and if you further find that in anticipation of the completion of said purchase the plaintiff engaged the steamer Peytona, when she should come to Madison, to take said flour on board, and transport the same to New Orleans; and if you further find it was uncertain, at the time of engaging such boat, when she would arrive at Madison; and if you further find that on the 14th day of January, 1865, said plaintiff purchased and paid for said flour, and closed said negotiation, and that the said steamer Peytona had notified the parties that she would be at Madison on Sunday, the 15th of January, 1865; and if you further find from the evidence that there was actual danger, at

the time, of navigation closing soon, on account of the state of the weather; and if you further find that at the said time the water in the Ohio river was falling fast, and that a delay of the said boat over to and during Monday, the 16th of said month, would endanger her passage over the falls at Louisville, Ky., and leave her in danger of becoming ice-bound in said river; and if you find from the evidence that said steamer was too large to pass through the locks around said falls; and if you further find that on account of the foregoing matters (if the same be found by you) the defendants, at the time of said contract of sale above referred to, agreed to deliver said flour at the wharf, to said steamer, at Madison, on Sunday, the 15th day of January, 1865; then it is a question for you to decide whether such delivery of the flour was not a matter of necessity, under all the circumstances of the case.   The necessity cannot arise for the mere convenience of a party; nor can it be founded on mere pretense; but must arise from the action of the elements, or upon some contingency not occurring in the ordinary transactions of business.   And a necessity may be justified in the management, protection, or disposition of property, the value of which in market or otherwise may be greatly endangered by action and operation of the elements; and, if in this case a real necessity for the delivery on that day existed, the defendants were bound to deliver the flour on that day, if they agreed to do so, as above stated."

The court refused to give the charge, and the appellant excepted.

If it is illegal to make a contract on Sunday, it certainly is illegal to contract to perform one requiring common labor on that day.   We think the true rule and the reason for it are recognized and stated in *Perkins* v. *Jones*, 26 Ind. 499.

If the vicissitudes of trade and speculation were allowed to fix the rule as to what are works of necessity, there could be no observance of the Sabbath.   There are, as a general

thing, dangers attending every enterprise, which may be avoided by expedition; but the Sabbath is not the day for common labor although by such labor dangers may be avoided.

We think the court below put the case properly to the jury.

We have looked through the evidence, and think there was no testimony tending to prove a contract to deliver the flour on Sunday. In the absence of such a contract, it is clear that performance cannot be demanded on that day, on the ground that a delay would subject the obligee to liability to pecuniary loss. The cases cited by the counsel for appellant do not meet this case.

In *Logan* v. *Mathews*, 6 Penn. St. 417, it was held, that the visiting of his father by the defendant was a discharge of a filial duty, which nothing in the law hindred or forbade.

The ruling in *Commonwealth* v. *Knox*, 6 Mass. 75, was put on the ground, that the defendant had contracted with the postmaster general, under an act of Congress, to carry the mail on Sunday, and that by the Federal Constitution, laws, made in pursuance thereof are declared to be supreme laws of the land, and to be binding on the judges in every state in the Union.

In *Flagg* v. *The Inhabitants of Millbury*, 4 Cush. 243, it was held, that when a defect in the highway is discovered on the Lord's day, which may endanger the limbs and the lives of travellers, it is not only morally fit and proper that it should be immediately repaired, but it is the imperative duty of the town, which is bound to keep the highway in repair, to cause it so to be done, or to adopt means to guard against the danger until it can be done.

In the case under consideration, liability of delay in getting the flour to market was the only thing involved. There was no filial duty to be performed; there was no supreme law of the land requiring and making the act lawful; life and limb were not endangered by the omission to do the work demanded. There was no moral fitness in requiring

the appellees to do the work of delivery on the Sabbath for any purpose involved in the transaction.

If the steamer in this case could lawfully demand to be freighted on the Sabbath, we know of no legal reason that would prevent any boat on the Ohio river from making a like demand.

There was no error in overruling the motion for a new trial.

The judgment is affirmed, with costs.

*H. W. Harrington* and *C. A. Korbly*, for appellant.

*C. E. Walker*, for appellees.