Filed Dec. 21, 1894.

———◆———

No. 16,893.

PHILLIPS *v.* KENNEDY ET UX.

139   419
147   422

FRAUDULENT CONVEYANCE.—*Husband and Wife Joining in Conveyance of Husband's Lands for the Purpose of Retaking it as Tenants by Entireties.—Exemption from Execution.*—Where A, his wife joining him, conveys land held by him in fee simple to B, without consideration, who, according to agreement, immediately reconveys the same to A and wife as tenants by entireties, A not having prop-

erty left, over and above his legal exemptions, to pay his unsecured debts, such conveyance was fraudulent as against such debtors, and may be set aside.

SAME.—*Special Finding.*—*Fraud as an Ultimate Fact.*—*Recovery.*— In an action to set aside a fraudulent conveyance, where the facts are specially found, there can be no recovery in the absence of a finding of fraud as an ultimate fact.

From the DeKalb Circuit Court.

*C. M. Phillips*, for appellant.
*J. F. Shuman* and *F. S. Roby*, for appellees.

HOWARD, J.—This was an action by appellant against appellees to set aside an alleged fraudulent conveyance of real estate, and to subject the land so conveyed to the payment of a judgment in favor of appellant.

There was a special finding of facts by the court, followed by conclusions of law and a judgment for appellees.

The conclusions of law and the overruling of the motion for a new trial are assigned as errors.

The facts found by the court, so far as they need be set out, are as follows:

"1, 2. That on the 5th day of August, 1891, the appellee William Kennedy was the owner, in fee simple, of the land in controversy, situated in DeKalb county, which was, at the time, of the value of $4,000.

"3. That the appellee William is aged fifty-seven years, and his wife, the appellee Olive, is aged fifty-six years; that they have a son and daughter, both married and living separate from appellees.

"4, 5. That on said 5th day of August, 1891, the appellee William was indebted in the aggregate sum of $601; of which amount $500 was evidenced by promissory notes, each secured by Norman T. Jackman, who was then, and is now, solvent and able to pay the amounts so secured by him; and that $96 of the re-

mainder of said indebtedness has since been paid by the appellee William Kennedy.

"6. That on said 5th day of August, the appellee William Kennedy owned personal property of the value of $600, and no more, and that he was then, and still is, a resident householder of DeKalb county, and, as such, at all times herein named, was entitled to the benefit of the exemption laws of this State.

"7. That on said 5th day of August, the appellees were the owners, as tenants by entireties, of a house and lot in Waterloo, DeKalb county, of the value of $600, and of no other property.

"8, 9. That on said 5th day of August, the appellee William Kennedy, his wife, the appellee Olive, joining, conveyed the land in controversy to Norman T. Jackman, who paid nothing therefor and took the same for the purpose of conveying it to appellees; that on the same day, Norman T. Jackman conveyed the land to appellees as tenants by entireties.

"10. That prior to the execution of said deeds, and as part of the same transaction, appellees agreed between themselves that the house and lot held by them as tenants by entireties, and situated at Waterloo, should be sold and the proceeds used by William Kennedy in paying his debts.

"11. That William Kennedy received no consideration for the conveyance of said real estate.

"12. That on the 1st day of September, 1891, appellant began an action in the justice court against said William Kennedy on contract, which action was appealed to the DeKalb Circuit Court, and resulted in a verdict and judgment in favor of appellant, in the sum of five dollars; that said judgment is in full force, and wholly unpaid; that execution was issued upon said judgment, against the said appellee, and was returned unsatisfied for

the reason that no property could be found upon which to levy the same; that said judgment was rendered upon indebtedness existing on August 5, 1891, and prior thereto, on contract, as before found.

"13. That at the time said real estate was so conveyed to appellees, the appellee Olive Kennedy did not know that her coappellee was indebted to appellant, or that appellant claimed such debt to exist, and that in all of said transactions she acted in good faith and without fraudulent or wrongful intention.

"14. That the appellee William Kennedy has not had, since the rendition of said judgment, and does not now have, sufficient property, over and above his legal exemptions, to pay his debts.

"15. That after the execution of the conveyances aforesaid, and the transfer of the title of said land to appellees, they were unable to sell the house and lot in Waterloo; that, failing to do so, they mortgaged it to secure a loan of $250, which sum was used by William Kennedy in paying his debts aforesaid. At that time the appellee Olive Kennedy knew that appellant's judgment against her coappellee was unpaid.

"16. That the appellee William Kennedy in making the conveyances and transfer aforesaid, acted in good faith for the purpose of securing to his wife the use of all said real estate, in the event of her surviving him, and without any intention to hinder, delay or defraud any person."

We think it sufficiently appears from these findings, that the transfer of title to the land in question, made by William Kennedy, through Jackman as trustee, to appellees as husband and wife, was without consideration; and, consequently, that the appellee Olive Kennedy is affected by any fraud intended by her coappellee, even though she may herself at the time have had no

knowledge of such fraud, if any existed. *Mendenhall* v. *Treadway,* 44 Ind. 131; *Spinner* v. *Weick,* 50 Ind. 213; *Spaulding* v. *Blythe,* 73 Ind. 93; *McAnich* v. *Dennis,* 123 Ind. 21; *Roberts* v. *Farmers', etc., Bank,* 137 Ind. 697.

Counsel for appellees say that the eleventh finding, in which it is expressly stated that William Kennedy received no consideration for such conveyance, is but a conclusion, and should be disregarded. However that may be, it is clear from other findings that no consideration moved to William Kennedy from the transfer.

Neither can it be said that it is shown that Olive Kennedy gave any consideration. Any interest held by her in the land as the wife of William Kennedy was by the transaction increased to a larger interest in the same land. If the conveyance were to a third person it would be different, and the yielding of her inchoate interest might, in a proper case, be regarded as a consideration upon which she would herself be entitled to recover. *Jarboe* v. *Severin,* 85 Ind. 496.

The case here is quite different. William Kennedy parted with his lands without receiving anything in return out of which he might pay the debts which before the sale could be collected out of the lands. The absence of such consideration to him is the badge of fraud upon his creditors. He has parted with the property upon the possession and ownership of which he had been given credit, and he has received nothing in exchange which may be reached by his creditors. They are thus cheated, hindered, and delayed.

The court finds that at the time of the transfer, the appellees owned another piece of property by entireties, which they then agreed should be sold to pay William Kennedy's debts. It is not found that the property was transferred to him for that purpose.

It may be conceded that such an agreement tends to show good intention on the part of appellees. But an understanding between them of that nature, however praiseworthy, could not be carried into effect by creditors. The agreement could have but a moral bearing. The intent of which the law takes notice is evidenced by the acts of the parties.

Mr. Bump, in his work on Fraudulent Conveyances, p. 274, says of creditors under such circumstances, that "It is true that they frequently look to the debtor's honesty, industry and skill in business, but the law can not take these into account, for they do not afford any means by which the payment of debts can be enforced."

An inspection of findings 4, 5, and 15 will serve to strengthen this view. William Kennedy's secured debts amounted to $500, the unsecured to $101. On failure to sell the Waterloo property it was mortgaged for $250. If the agreement to use the proceeds of that property in payment of William Kennedy's debts were made in good faith, appellees would first make payment of the unsecured debts, of which appellant's was a part, and all of which could have been paid by the money so obtained. It appears, too, that at the time of obtaining this $250, the appellee, Olive Kennedy, knew that appellant's judgment was unpaid. It seems very clear that there was no intention to pay the debt due appellant.

As appellees thus showed an unwillingness to pay appellant's judgment out of their common property, and as William Kennedy had no separate means left, on deducting his statutory exemption, out of which appellant could enforce his claim, after the transfer of the four thousand dollar farm, we are driven to the conclusion that this transfer was a fraud upon appellant.

The fact that appellees had, for some time, contemplated such a transfer as a security for Olive Kennedy's

old age, can not affect this conclusion; neither can the fact that appellant's judgment was a small one.  If the debt was small, it could the more easily be paid; and the transfer might then be completed for the honest purpose for which it was originally intended.

The judgment is reversed, with instructions to the court to restate its conclusions of law in accordance with this opinion and to render judgment for the appellant.

Filed Oct. 16, 1894.

### ON PETITION FOR A REHEARING.

HOWARD, J.—The appellees have filed a petition and brief for a rehearing of this case, and also a motion to modify the mandate.

Nothing in the courteous argument of the learned counsel has satisfied us that the opinion is incorrect as to the merits of the case.  The transactions complained of certainly showed fraud as to appellant's debt.

The petition for a rehearing is overruled.

But, on reflection, we are of opinion that the mandate should be modified as prayed for.  The court did not find fraud as an ultimate fact; though, as we think, it should be inferred from the facts found.  The facts as found, however, in the absence of a finding of fraud against appellees, will not support a judgment against them.

The mandate is so modified, therefore, that the judgment is reversed, with instructions to grant a new trial, and for further proceedings not inconsistent with this opinion.

Filed Dec. 20, 1894.